B. W. TAYLOR, Respondent, v. CARL N. OULIE, Appellant.

(212 N. W. 931.)

**Process — attorney — special authority.**

1. An attorney cannot accept legal service of a summons without special authority.

**Courts — jurisdiction acquired, how.**

2. The court can only acquire jurisdiction of the person of a defendant by the service of the summons upon the defendant as provided by law, or by his voluntary appearance.

**Judgment — based on unauthorized appearance, void.**

3. When an attorney makes an unauthorized appearance, accepts service on the summons, complaint and notice of trial, and files answer, a judgment rendered in such case is void, and may be set aside on motion at any time.

Opinion filed March 26, 1927.

Appearances, 4 C. J. § 41 p. 1350 n. 26. Attorney and Client, 6 C. J. § 148 p. 644 n. 17. Courts, 15 C. J. § 96 p. 798 n. 65; p. 799 n. 66. Judgments, 33 C. J. § 55 p. 1096 n. 97; 34 C. J. § 486 p. 257 n. 89.

Appeal from the District Court of Mountrail County, *Moellring,* J. Reversed.

*R. E. Swendseid,* for appellant.

---

Annotation.—(1) Authority of attorney to accept service of process, see 2 R. C. L. 988; 1 R. C. L. Supp. 673; 4 R. C. L. Supp. 132.

(2) Jurisdiction acquired by personal service of process, 21 R. C. L. 1270.

(3) Vacation of judgment on unauthorized appearance, see 15 R. C. L. 713.

· "A voluntary appearance is an appearance of one's own free will, done by design, purposely without being influenced or impelled by others."    40 Cyc. 22.

"In the absence of statute, a general retainer does not authorize an attorney to accept service of process by which the court acquires jurisdiction over the party."    6 C. J. 644.

The burden of proving service is on the plaintiff.    Rice v. Bennett, 29 S. D. 341, 137 N. W. 359.

"It is a fundamental principle of our jurisprudence, embedded in the fundamental laws of both state and nation, that no man shall be personally bound until he has had his day in court."    Gallagher v. National Nonpartisan League, 53 N. D. 238, 205 N. W. 674.

"An attorney, by virtue of being retained, may not waive or accept service of process for his client, but to do so he must be specially authorized and therein would act as agent or attorney in fact and not because of his relation as attorney-at-law."    Fuchr v. Express Co. (Iowa) 163 N. W. 347.

*F. F. Wyckoff,* for respondent.

"The authority of an attorney or a ratification of his unauthorized acts may be inferred from circumstances, as, for instance, from the silent acquiescence of the client for a long period."    2 R. C. L. 977.

In determining whether a client has ratified the act of his attorney or is estopped to deny the attorney's authority, it must appear that he approved it with knowledge of what the agent had done and promised in the principal's behalf.    2 R. C. L. 977.

A party who has been represented by an unauthorized attorney must disavow and disaffirm the action promptly upon receiving knowledge thereof.    Harshey v. Blackmarr, 20 Iowa, 161.

BURKE, J.    This is a motion made on special appearance to set aside a judgment of foreclosure, entered in the district court of Mountrail County, on the 27th day of December, 1924, on the ground that the court had no jurisdiction over the person of the defendant, for the reason, that no summons had been served upon the defendant, and that there was no voluntary appearance of the defendant in said action.

B. W. Taylor, the plaintiff, in said action, on the 10th day of January, 1919, commenced the foreclosure of two mortgages on the

s. w. ¼ of section 8, twp. 154, r. 90, by advertisement, and. which said land had been filed and proved up on as a homestead by H. C. Collum and wife, and thereafter sold to Carl Oulie.

Mrs. Spettel of Minot, North Dakota, a sister-in-law of said Oulie wired him at Los Angeles, California, that mortgages against his land were being foreclosed. Oulie wired to Mrs. Spettel, "Get an honest attorney and meet them in court. Find out attorney's fees first, I am sending $35 now, will send more immediately. Judge gives time to pay judgment $294.10 tender was returned here by Stanley Bank last month. Willing to pay good mortgage."

Defendant's attorney, Theo. B. Torkelson, of Bowman, N. D. wired Mrs. Spettel as follows: "Employ competent attorney today to enjoin foreclosures show him newspaper and this telegram. Make affidavit information and belief Barber mortgage amount claimed excessive not over $180 due, other mortgage void on homestead executed only by husband. Must get and serve judge's order before same."

Mrs. Spettel employed the firm of Palda & Aaker of Minot, North Dakota, and the foreclosure by advertisement was enjoined and all further proceedings for the foreclosure of said mortgages ordered to be had by action in court.

It is clear from the correspondence and telegrams that Mrs. Spettel was the agent of Mr. Oulie, and that as such she employed Palda & Aaker to enjoin the foreclosure of the mortgage. Her agency expired on March 19, 1921, as shown by her answer to a letter from Oulie in which she states:

"I simply have tried to post you and advise you, and now the attorney up there wants to start an action to foreclose as that is what we forced them to, when we signed the papers, they would have to foreclose by action and not by advertisement. The attorney whom I paid the money for did that part of it and of course could do no more without your instructions.

"I can not do anything more about it, I thought that I was trying to post you, and have told you what to do and as long as you have not paid any attention to it I am returning herewith the balance which is due you from the money that you sent me at that time to take care of the restraining order."

The telegram from Oulie to Mrs. Spettel was qualified by the tele-

gram from Torkelson, who pointed out specifically the procedure to stop the foreclosure of the mortgage, and Mrs. Spettel states in her letter of March, 1921, "That she employed Palda & Aaker to enjoin the foreclosure of the mortgage, and of course, they could do no more without your instructions. I cannot do anything more about it and I am returning the money you sent me at that time to take care of the restraining order."

Palda & Aaker understood Mrs. Spettel's authority, for on October 9th, 1919, they report to the defendant Oulie and state, "At the request of Mrs. Spettel we restrained the foreclosure by advertisement which the bank of Stanley was attempting to rush through." This statement agrees with the statement of Mrs. Spettel, that is, that she employed Palda & Aaker to secure the restraining order. In the letter of October 9th Palda & Aaker recommend an action to quiet title, and then asks for instructions.

On February 5, 1921, Palda & Aaker wrote Mr. Wyckoff and stated: "As soon as we hear from him, we will let you know what *he wants to do and if he wants to proceed we will admit service of the complaint.*" Under the date of April 19, 1921, Palda & Aaker wrote to Wyckoff again, stating: "We have not heard from Oulie but we will admit service on the summons and complaint." On the same day they wrote Oulie, again asking for authority and information. On March 27, 1922, Palda & Aaker wrote to Oulie stating: "We have been served with summons and complaint." On March 24, 1924, Palda & Aaker wrote Oulie and said: "We have never been able to get any replies from you, and neither has Mrs. Spettel been able to give us any information." So it appears very clear from these letters that Palda & Aaker never had any authority, except such authority as was given them by Mrs. Spettel and which both agree was authority only to enjoin the foreclosure action, and after Mrs. Spettel's letter of March 19th, 1921, she was no longer the agent of the defendant Oulie.

Section 7959, Comp. Laws 1913, provides:

"That when a party shall have an attorney in the action, the service of papers shall be made on the attorney instead of the party."

Section 7960, Comp. Laws 1913, provides:

"The provision of this chapter shall not apply to the service of a summons or other process."

Under the last section the service of the summons could not be made on Palda & Aaker, and when Oulie received the letter from Palda & Aaker stating that summons and complaint had been served on them, Oulie was not required to do anything, for such service would be void, and could not give the court jurisdiction over the person of the defendant Oulie. If the summons could not be served on Palda & Aaker, it follows that they could not admit service without special authority.

Rice v. Bennett, 29 S. D. 341, 137 N. W. 359, is in point. In this case, the attorney was dealing directly with the defendant. The defendant wrote the attorney as follows: "I am defendant in some cases at Fullerton and I want you to look after my interest." The attorney wrote, "I am in receipt of your favor . . . I will enter an appearance in these cases," and again the attorney wrote the defendant, "Replying to yours of the 9th, I have been informed that you desire me to make an appearance in several cases." Quite a good many other letters passed between them and it was contended that the defendant was estopped to dispute jurisdiction and from denying the authority of the attorney to waive service of process, but the court followed Masterson v. Le Clair, 4 Minn. 163, Gil. 108, from which it quotes the following:

"It is no part of the duty of an attorney, nor is it within his power as an attorney, to admit service for his client of an original process by which the court obtains jurisdiction for the first time of his person. To exercise such a power and bind his client, he would require a special authority." Bradley v. Welch, 100 Mo. 258, 12 S. W. 911; Reed v. Reed, 19 S. C. 548. In Ashcraft v. Powers, 22 Wash. 440, 61 Pac. 161.

"In the absence of statute, a general retainer does not authorize an attorney to accept service of process by which the court acquires jurisdiction over the party." 6 C. J. 644.

"The tendency of the latest decisions seems to be to establish the doctrine that a judgment resting on the unauthorized appearance is absolutely void." 2 R. C. L. §§ 61, 984.

"It is a universally recognized rule that a judgment which is absolutely void may be vacated by the court in which it was rendered. And the court may strike from the judgment any portion of it which is wholly void." Freeman, Judgm. § 226.

55 N. Dak.—17.

"There are in general three jurisdictional elements in every valid judgment, nemaly, jurisdiction of the subject matter, jurisdiction of the person, and the power or authority to render the particular judgment. For the absence of any one of these elements when properly apparent, the judgment may be vacated at any time, whether before or after the term or the time limited by statute for motions on statutory grounds, either on motion or of its own volition without suggestion." Freeman, Judgm. § 226.

We think that the record shows that Palda & Aaker were honestly trying to be of service to the defendant Oulie. This is apparent from the many letters they wrote him advising him of what was being done and asking for instructions and authority. Oulie states that he received two of the letters, but that he never employed them, and gave them no instructions and that they had no authority, except such as was given to them by Mrs. Spettel, and that she had no authority, except as stated in the telegrams, and that whatever authority she had, was revoked by her letter of March 19, 1921, in which she states, that she paid the attorney for their service and could do no more, and that no authority was thereafter given to her.

Oulie's failure to answer the letters of Palda & Aaker does not deprive him of his legal rights, and the appearance in said action and the acceptance of service upon the summons, complaint, notice of trial and the filing of the answer without service of original process, and without special authority to admit service thereon renders the judgment void.

This is especially true in this case, for the reason that the plaintiff's attorney knew all the time that Palda & Aaker were writing to the defendant for instructions, and that they never received any. The defendant filed with his special appearance an affidavit of merit, and for the purpose of showing his good faith, he stated in open court that he was willing to have the judgment set aside and that he be given time to answer and defend in said action, on the merits, and that he be permitted to interpose only such defenses as existed at the time of the bringing of said action, expressly waiving all question of the statute of limitations.

The lower court erred in not granting the motion, and it is ordered that the judgment of the lower court be vacated and set aside, and the

defendant given thirty days to answer as to such defenses as existed at the time of the bringing of the action.

BIRDZELL, Ch. J., and. CHRISTIANSON, and NUESSLE, JJ., and PUGH, District J., concur.

Mr. Justice BURR did not participate; Honorable. THOS. H. PUGH, of Sixth Judicial District, sitting in his stead.